**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**The OHIO CASUALTY INSURANCE CO.,**
Defendant-Appellant.

No. 18035.

United States Court of Appeals
Sixth Circuit.

Sept. 9, 1968.

John O. Henry, Dayton, Ohio, for appellant, Estabrook, Finn & McKee, Robert P. Bartlett, Jr., Dayton, Ohio, on brief.

Norman Knopf, Dept. of Justice, Washington, D. C., for appellee, Edwin L. Weisl, Jr., Asst. Atty. Gen., John C. Eldridge, Atty., Dept. of Justice, Washington, D.C., Robert M. Draper, U. S. Atty., Dayton, Ohio, on brief.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

On June 30, 1960, the Commodity Credit Corporation entered into a Uniform Grain Storage Agreement for the storage of agricultural commodities with Ross Elevator Company. The agreement required Ross to furnish a surety bond for the benefit of the CCC. Pursuant thereto Ross on July 21, 1960, obtained a $15,000 surety bond from the Ohio Casualty Insurance Company. On March 7, 1962, a rider was attached to the bond increasing its amount to $19,000 due to growth in Ross' storage capacity.

On July 20, 1962, a CCC inspector making a routine check of Ross' facilities and records discovered a large shortage of CCC commodities of a value in excess of the $19,000 surety bond. The CCC immediately removed its commodities and, having failed to obtain reimbursement from Ross for the shortage, commenced suit and obtained judgment against Ross for $65,275.89, which went unsatisfied. The CCC then sued appellant herein on its $19,000 surety obligation.

Appellant admits on this appeal, as it did in the District Court, that it is bound by the aforesaid judgment against its principal, Ross Elevator, if the bond in question is legally enforceable. As stated at page 6 of its brief:

"As indicated above, Ohio Casualty does not dispute that the dollar amount of the loss claimed by CCC, exceeds the amount of the surety's obligation, but does dispute the legal validity and enforceability of the surety bond and rider."

It defends against liability under the bond on two bases: 1) that the CCC withheld material information regarding the integrity of Ross Elevators, known to the CCC at the time of the issuance of the bond; and 2) that the CCC learned on March 15, 1961, that Ross was not keeping "daily position sheets," but failed to disclose this to the surety. For the reasons which follow we reject these contentions and affirm the judgment of the District Court.

1. Nondisclosure Prior to Issuance of Bond.

The District Court made the following finding of fact:

"A meeting of the Shortage Committee of the Department of Agriculture on June 14, 1960, concerning 2,628.57 bushels of corn valued at $2,997.84 was called to ascertain the location of certain warehouse receipts which apparently had been lost by Commodity Credit Corporation. *The United States did not have knowledge of any actual shortages of grain on June 14, 1960, at the Ross Elevators, Inc. facilities.*"

It is not contended by appellant that said meeting (or an earlier one which apparently also had been held) disclosed any actual shortages of grain at Ross Elevators, Inc. Appellant argues, rather, that the CCC had a duty to disclose to the surety the bare fact that these meetings had taken place. The testimony of appellant's Fidelity Surety Bond Supervisor that such meetings would "indicate a lack of *integrity* or ability in storing grain," and that he would not have issued the bond had he known of the meetings, is said to compel the conclusion that the information was "material" and that a duty to disclose on the part of the CCC was thereby created.

Appellant has quoted and cited in its brief to us cases inapposite to the factual situation here presented. These cases involve the failure of an employer, in obtaining a fidelity bond for his employee, to disclose to the surety the prior dishonesty or defalcations of the em-

ployee. Appellant quotes from an annotation at 4 A.L.R.3d 1197, 1199, the basic rule of law involved as follows:

"It seems to be fairly well-settled that an affirmative misrepresentation or concealment by the obligee of a bond, of *prior defalcations* by the person to be bonded, will serve to excuse the surety from liability on the bond, since clearly such information is material to the risk to be assumed." (Emphasis supplied.)

CCC is said to have withheld information of "prior defalcations" of Ross Elevator. We cannot agree that such a conclusion follows from the aforementioned "shortages" meetings.

We think the applicable rule has been well put in 8 A.L.R. 1485, 1490, *Annotation: Obligee's concealment of facts or evasive answers as fraud against surety,* as follows:

"To discharge the surety on the ground that the obligee has concealed or withheld from him material facts affecting the risk, there must be a duty on the part of the obligee to make disclosure, it being well settled that, unless this duty arises under the circumstances of the particular case, the surety will not be released from his obligation by the mere fact that he did not have information which the obligee possessed, affecting the risk, and which would have probably prevented his signing the contract; in other words, there is nothing in the mere nature of the contract of suretyship itself which requires the obligee to disclose to the proposed surety all the material facts affecting the risk."

See, e. g., Magee v. Manhattan L. Ins. Co., 92 U.S. 93, 23 L.Ed. 699 (1876); 72 C.J.S. Principal and Surety § 77. We hold that the District Court committed no error of law or fact in holding that, in the circumstances of this case, no duty devolved upon the CCC to make disclosure of the "Shortages" meetings.

### 2. Nondisclosure of Ross' Failure to Keep Daily Records.

Section 20 of the grain storage agreement between Ross and the CCC required Ross to keep "daily position sheets" of the inputs and outputs of agricultural commodities in its warehouse (other grain along with that of the government was stored on a comingled basis). On and after March 15, 1961, CCC inspectors noted on their inventory checks of Ross Elevators that said daily records were not being adequately kept. These checks, however, revealed no actual shortages of commodities in the Ross facilities. Appellant contends that the acquiescence of the CCC in Ross' "default" amounted to a material alteration of the grain storage agreement without the knowledge and consent of the surety, and therefore discharged the surety. Even were this contention a correct statement of relevant law, it must in all events fail by virtue of the express language of the contract of suretyship itself, which provides: "Notice of * * * modifications [of the grain storage agreement] to the Surety being hereby waived * * *."

We think, furthermore, that the District Court was correct in concluding that the CCC did not have a duty to disclose to appellant Ross' failure to keep adequate records as a "material default" under the grain storage agreement. In this regard the discussion in 72 C.J.S. Principal and Surety § 150, at pp. 637–638 is quite relevant:

"[A] surety is not discharged from further liability generally, on failure of the obligee to notify him of his principal's default, where the suretyship contract contains no stipulation that such notice shall be given, * * even where the bond requires notice, the surety is not discharged by a failure to give notice of slight defaults, which are waived by the obligee; or on mere suspicion of possible default; * * * or where the surety already has knowledge or is chargeable with knowledge of the default."
Judgment affirmed.